## Resthaven Memorial Cemetery, Inc., v. Jennings.

June 19, 1942.

Dodd & Dodd for appellant.

Bernard H. Barnett for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE PERRY—Affirming.

This is an appeal from the Jefferson circuit court, chancery branch, second division, by the appellant, Resthaven Memorial Cemetery, Inc., and a cross-appeal by W. Spencer Jennings, here appellee, from a judgment rendered by Chancellor Burnette incident to a suit insti-

tuted for a declaration of rights pursuant to Section 639a—1 et seq., Kentucky Civil Code of Practice.

The plaintiff below, W. Spencer Jennings, here the appellee, complaining that the appellant cemetery company, defendant below, had violated the terms of its contract had with him, brought this suit for a declaration of rights between plaintiff and defendant, by reason of the fact alleged, that an actual controversy exists between them as to the construction of a contract, which is the basis of this action, and asking that the contract be adjudicated between the parties as to whether or not it constitutes a loan with collateral to secure it or an outright sale of certain cemetery lots by the defendant to plaintiff and prayed that their transaction be adjudged to constitute a loan with collateral and that plaintiff have judgment against defendant by reason of defendant's breach of its contract in the amount sued for of $540 with interest until paid.

Plaintiff by his petition alleged that the defendant, Resthaven Memorial Cemetery, is a corporation organized under and pursuant to Kentucky Statutes, Section 538 et seq., for profit as of November 13, 1927, with power and right as such to contract and be contracted with, sue and be sued and do any and all things incident to its charter, including the right to buy, hold and sell personal and real property.

Further plaintiff alleged that on May 1, 1941, defendant borrowed $540 from him and obligated itself to pay him $36 per annum ($12 per unit, a unit consisting of $180), at the rate of $3 per month, for a period of eight years or until May 2, 1949, and that upon failure of the defendant to pay plaintiff the $36 per annum, $12 per unit, $3 per month, payable monthly, the entire principal of $540 would become due and payable at the option of plaintiff.

Further plaintiff alleged that at the time the said defendant borrowed from him the said $540, the defendant issued to him a ''Re-purchase Certificate,'' evidencing said contract in its entirety, which certificate was filed with and made a part of the petition and marked ''Exhibit A''; further, that the defendant did simultaneously with the issual of said ''Re-purchase Certificate'' issue plaintiff a deed to three cemetery lots, described as units Nos. 32, 33 and 34, all located in Section 7, of the

value of $180 each, or a total value of $540, which deed also was filed with and made a part of the petition and marked "Exhibit B".

Plaintiff further alleged that subsequent to the issual of said "Re-purchase Certificate" and deed by the defendant to him, the defendant paid the $36 per annum, $12 per unit, $3 per month, payable monthly, or more particularly paid the $3 due the first day of June, 1941, and the $3 due the first day of July, 1941, or a total of $6, but that subsequent to July 1, 1941, more particularly on August 1, 1941, he demanded of the defendant that it pay him the $3 due him pursuant to the terms of the "Re-purchase Certificate" but that defendant refused to pay him the sum of $3 or any sum and has continued to refuse to pay him such sum or any sum.

Further plaintiff alleged that the said refusal by defendant is a direct violation of the covenants set out in the "Re-purchase Certificate," "Exhibit A," that:

"The company will pay $12.00 per year, per unit, payable monthly * * *."

"It is understood that the company will repurchase from the owner at the expiration of the eight years from the date of the signing of this said certificate, said units * * *."

Further plaintiff alleged that by the said defendant's failure to pay the said $3 as of August 1, 1941, it has precipitated the entire indebtedness due by it to said plaintiff and that all provisions requiring notice prior to the expiration of the eight-year period have become null and void and of no effect and that defendant is forthwith obligated to pay to plaintiff the sum of $540 with interest at the rate of $36 per annum, $12 per unit, $3 per month, payable monthly, until paid; and, further, that upon the payment of same, plaintiff will re-deed units Nos. 32, 33 and 34, in Section 7, to the defendant, pursuant to the terms of its "Re-purchase Certificate," "Exhibit A."

In plaintiff's petition there is set out a recapitulation of the facts in controversy, which is concurred in by defendant, as follows:

"1. Plaintiff and defendant agree that the repurchase certificate filed herein as 'Exhibit A' constitutes the entire contract between plaintiff and defendant, and

"2. Plaintiff contends that the $36 per annum, $12 per unit, $3 per month, payable monthly, constitues interest; whereas defendant contends that the $36 per annum, $12 per unit, $3 per month, payable monthly, constitutes an option that the defendant may or may not exercise in its discretion.

"3. Plaintiff contends that by the terms of the re-purchase certificate filed herein as 'Exhibit A', defendant obligated itself to unconditionally re-purchase from the plaintiff at the expiration of eight years units Nos. 32, 33 and 34 in Section 7, and in the event of default, as is herein set out, there is a precipitation of the right of this plaintiff to compel said defendant to forthwith repay said $540 according to the terms of said re-purchase certificate; whereas defendant contends that the obligation to re-purchase is not binding upon the defendant unless the defendant exercises its option by the payment of $36 per annum, $12 per unit, $3 per month, payable monthly, and in the event the defendant elects not to exercise said option, it is nowise obligated, in any manner or at all by the terms of said re-purchase certificate, to re-purchase said units at the expiration of eight years or before or at any time at all, and that the plaintiff is at liberty after the defendant has failed to exercise said option to sell said units to whomever he so desires.

"4. Plaintiff contends that said re-purchase certificate constitutes a loan of money with a mortgage in the form of a deed as collateral; whereas defendant contends that said re-purchase certificate constitutes a contract of sale consummated by the execution of the deed to the plaintiff for units Nos. 32, 33 and 34 in Section 7 filed herein as 'Exhibit B'."

The case coming before the court upon the pleadings and exhibits and being submitted in chief for judgment thereon, the court filed its written opinion, made a part of the record, and in accord with which counsel were directed to draw judgment, which was accordingly entered.

As we find the conclusions reached by the learned chancellor, in his decision of these questions submitted, to be in harmony and consonant with our views and that

he has both aptly and ably set forth therein the rationale and grounds upon which his adjudication of the questions submitted is based, we are pleased to adopt the learned chancellor's opinion herein rendered as that of this court. The opinion is as follows:

"The plaintiff seeks a declaration of his rights under two written instruments styled 'Deed to burial lots' and 'Re-purchase certificate' executed and delivered to him by the defendant, Resthaven Memorial Cemetery, a Kentucky corporation. The corporate name of the defendant indicates the nature of its business and the petition alleges that it is organized *for profit* with power to buy, hold and sell personal and real property. It is common knowledge that it operates a cemetery near Louisville and has been for some years engaged in selling burial lots in its cemetery.

"The plaintiff files as an exhibit with his petition the deed from the Company conveying the burial lots to him and alleges that the entire contract was contained in what is known as the 'Re-purchase certificate,' which he also files. It is further alleged that both instruments were 'issued' simultaneously and I think they must be construed together. Both recite the receipt of a consideration of $540.

"The plaintiff contends that the $540 was a loan from him to the Cemetery Company and that the conveyance to him of the burial lots was not a deed but in legal effect a mortgage on the lots conveyed to secure the loan. He further contends that while by the terms of the 'Re-purchase certificate' the Company agreed to pay plaintiff $12 per lot per annum for an option to re-purchase for a period of eight years, it was in legal effect an agreement to pay for the use of the borrowed money. Use of borrowed money is ordinarily called interest. Plaintiff seeks the consequential relief of recovery of specific sums for the use of the money and it may be noted that these sums of $12 per lot per annum, each lot costing $180, is more than legal interest (6% of $180 is $10.80 and 7% is $12.60).

"The defendant, by answer, contends that it sold and conveyed the burial lots to the plaintiff by deed, which by its tenor and fact constituted an ab-

solute sale of the burial lots. It further contends that the 'Re-purchase certificate' imposed no obligation upon the company to re-purchase but that the same constitutes merely an option—a privilege to re-purchase from the owner in the event it saw fit to keep the option in effect by making certain payments to the owner, certain other conditions existing.

"Defendant admits that it has refused to make the payments stipulated in the 'Re-purchase certificate' necessary to continue the option in effect and contends that it no longer has an option and hence has neither the right nor the obligation to re-purchase. It asks that it be so adjudged and the petition dismissed.

"Counsel for defendant have filed with their brief printed copy of the opinion in United States Board of Tax Appeals, styled 'Resthaven Memorial Cemetery, Inc., Petitioner, v. Commissioner of Internal Revenue, Respondent, Docket No. 98427,' where this defendant took the opposite side of the contention, claiming therein that the deeds to burial lots were in effect mortgages and the proceeds of the sale were merely loans. The Board, in a lengthy opinion based on the same form of transaction and the same form deed and 'Re-purchase certificate,' held against the Company's contention. The tax question involved more than two hundred transactions in 1935 and 1936, and the Board held that these deeds to burial lots were absolute sales.

" 'Deed to Burial Lot' is on a form elaborately engraved in black with a black border and is captioned 'Resthaven Memorial Parkland Cemetery.' The blanks in the engraved form are filled in on a typewriter, showing the consideration paid, the name of the plaintiff as grantee, description of the lots by lot and section number, as shown on recorded plat in the Clerk's Office, together with the date. The deed is executed by the President of the corporation, who acknowledged the same and attached the corporate seal. It recites:

" 'In consideration of the sum of Five Hundred Forty Dollars ($540.00) paid, the receipt of which is hereby acknowledged, (Resthaven Memorial Cemetery, Inc.) does hereby convey, with covenants

of general warranty, and against all encumbrances, except hereinafter referred to, unto W. Spencer Jennings, a married man, his heirs and assigns forever, the following described real estate in Jefferson County, Ky., to-wit: Lots Nos. Thirty-two (32), Thirty-three (33) and Thirty-four (34), in Section No. Seven (7) in the burial ground known as Resthaven Memorial Parkland Cemetery, as shown on Plat of same recorded in Plat and Subdivision Book 7, Page 109, in the Jefferson County Clerk's Office, and being a part of the property formerly conveyed to Resthaven Memorial Cemetery, Inc., by deed and recorded in Deed Book in the Office aforesaid.'

" 'Re-Purchase Certificate' is on an elaborately lithographed green bordered form closely resembling the ordinary form of a corporate bond or stock certificate and has a gold corporate seal attached thereto. The printed form is styled at the top, in large letters, 'Resthaven Memorial Cemetery, Inc.', underneath which, in heavy black caption, is 'Resthaven Re-Purchase Certificate' and contains a number of blanks which are filled in on typewriter. Across the top to be filled in is: 'Date issued, Amount, Annual yield.' The blanks are filled in with the name of the purchaser of the lot, the unit number, and price. It is executed for the corporation by its President and also signed by the plaintiff in the blank space '(To be signed by "Owner")'.

"The same form was filed as an exhibit in this Court in Thomas v. Resthaven Memorial Cemetery, Inc., No. 268980, an action based on a similar transaction in 1934 and the legal effect of the same form deed and 'Re-purchase certificate' are discussed as affecting sixty-eight lots sold by the Company in 1935 and one hundred and forty-one lots sold by the Company in 1936, all for the same price in the tax appeal opinion, all of which indicate the same method of selling burial lots by this defendant.

"I note that the burial lots are called 'lots' in the deed and 'units' in the 'Re-purchase certificate', but in both instruments they are given the same numbers and the same section number.

"It seems clear that the method employed by this Company was to sell a burial lot and a 'Re-pur-

chase certificate' together as a unit or combination. The 'Re-purchase certificate' should have been helpful to the Company and its salesmen as an inducement to a prospect to purchase a burial lot when he and his family were living and with no present need of a grave, or an inducement to a prospect to buy three burial lots, as here, at a time when he had no present need for even one. The method employed certainly facilitated the sale of the burial lots which in the ordinary course of events the Company could sell only to persons immediately after a death in the family. Without waiting the usual course, this method broke down sales resistance.

"The ordinary man in good health earning and accumulating would not be quick to purchase so morbid a thing as a place to be buried, but he might easily be convinced of the uncertainty of life and the certainty of death, and that he could, under this method, buy a burial lot, take a deed to same, if the cemetery proposed that it would buy the lot back at the end of eight years for just what was paid for it (or at a $10.00 premium prior to the ten years), and in the meantime make the purchase price a good investment by agreeing to pay 7% interest (legal interest on $180.00, the cost price, per year is $10.80 and 7% is $12.60; and the company agreed to pay $12.00 per annum), and all of this inducement was contained in the elaborate instrument called a 'Re-purchase certificate.'

"The question to be determined here is simply as to whether this 'Re-purchase certificate' had any value to the purchaser of a burial lot. The defendant contends that it placed no obligation whatever upon it—that it was merely an option to re-purchase which it might, at its own pleasure, entirely disregard even at the very instant of its delivery with the deed.

"If this contention is sound, the purchaser of the lot not alone got nothing of value by the certificate but he got less than nothing—for the option bound him to reconvey and did not bind the Company to re-purchase.

"I think that both the elaborate form of the 'Re-purchase certificate' delivered to the purchaser and

the 'unit' sales method employed by the Company indicate that the certificate was intended to be of value to the purchaser and not to the Company. The Company prepared the form and if there is an ambiguity, the certificate should be construed more strongly against the Company. The Company printed its own name entirely across the Certificate as a caption heading with no context. It obviously would not have done so if the instrument was intended to be binding solely on the purchaser and of advantage to it. The Company saw fit to head the instrument 'Re-purchase certificate' and did not then see fit to caption it a mere 'Option,' which it now contends it was in effect.

" 'Annual Yield' is printed in the conspicuous upper right hand corner with a line beneath filled in on typewriter '$36.00'. This had a very definite meaning to any prospective purchaser of a lot. The Company did not see fit to print a question mark after the word 'yield' and I think it cannot now be heard to say that its intention was that there could be no yield at all, unless the company saw fit voluntarily to pay it. The Company saw fit to expressly print on the certificate that the purchaser of the lot should be referred to all the way through as 'Owner'.

" 'The Body of the Certificate'. It was expressly provided that the Company, in consideration of the purchase of the lots, agreed that the Company would pay the owner $12.00 per year per unit (the amount is printed in italics) for the privilege of retaining an option on each lot or unit for a period of eight years under various terms and conditions hereinafter set out. These terms and conditions are printed in five literary paragraphs, each beginning 'It is understood'. 1. The Company will re-purchase for $540 ($180 per lot) the original purchase price at the end of eight years, upon the interesting condition that the owner give the company written notice within a thirty day period seven years and nine months thereafter but written notice seven years and ten months thereafter was too late and seven years and eight months thereafter too early. 2. The Company has the option to re-purchase at any time within the eight year period by payment of a

premium of $10.00 per lot. 3. The Company's 'right and/or obligation to re-purchase and to pay other option charges (the very question in this case well stated) shall cease' as to any lot if the owner buries or erects a manument thereon and in that event 'said agreement shall be deemed to have been fully discharged.' 4. The owner could not transfer except with the consent of the Company. 5. The Company is only obligated to re-purchase from the owner or his heirs and if the owner transfers the lot without the consent of the Company the obligation to repurchase or to pay the option fees is null and void.

"I think the Company's own printed words establish that the 'Certificate' is not a unilateral option contract but an agreement and obligation. Its contention herein is neutralized by its own words in paragraphs three and five above. Unless it recognized an obligation to re-purchase and to pay option charges it would have had no reason to expressly provide that in certain events its obligation should cease and terminate.

"In paragraph three it recited that its obligation shall forthwith cease and terminate upon interment in or erection of a monument upon any unit and in that event 'said agreement shall be deemed to have been fully discharged.'

"In paragraph five it is expressly provided that if the owner transfers the lot without its consent, 'then this agreement is to be null and void' as to the obligation of the Company (1) to re-purchase the unit transferred and (2) to pay the option fee thereon.

"I am assuming that this particular contract is transferable. It seems to have been over printed in this respect different from the Thomas certificate. Here the words 'Not transferable' are printed out and the word 'Transferable' printed at the top and the words 'Excepting when approved by an officer of the Company' are printed at the bottom of paragraph five in such a position as to be out of context.

"It is my conclusion that the deed to plaintiff is an absolute conveyance of the burial lot and not a mortgage and that unless and until there be an interment on the said lot or the erection of a monument

thereon, the Company is obligated to pay plaintiff the sum of $12.00 per year per unit payable monthly for a period of eight years and to re-purchase said lots for $180 each at the expiration of eight years in the event the notice set out in the agreement is given and that the Company has an option to re-purchase at any time within eight years from the date of the contract upon the payment of $190.00 per lot.

"There is no precipitation clause in the agreement and hence the plaintiff is not entitled to recover any greater sum than the monthly payments actually due. Nor is plaintiff entitled to recover the sum of $540 prayed for, which may never be due."

The judgment appealed from, having been, as directed, drawn in harmony with the chancellor's opinion, which we have approved and adopted, it is therefore affirmed upon both the appeal and cross-appeal.